UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| FARMER M., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:21-cv-00137-TWP-KMB |
| ) | |
| KILOLO KIJAKAZI, Acting Commissioner of the ) | |
| Social Security Administration,[1] ) | |
| ) | |
| Defendant. ) | |

### ENTRY ON JUDICIAL REVIEW

Plaintiff Farmer M.[2] requests judicial review of the final decision of the Commissioner of the Social Security Administration (the "SSA"), denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. For the following reasons, the Court **remands** the decision of the Commissioner.

### I.    PROCEDURAL BACKGROUND

On July 24, 2019, Farmer M. filed applications for DIB and SSI, alleging a disability onset date of June 20, 2019. (Filing No. 8-2 at 15.) His applications were initially denied on October 31, 2019, (Filing No. 8-4 at 6; Filing No. 8-4 at 15), and upon reconsideration on January 29, 2020, (Filing No. 8-4 at 26; Filing No. 8-4 at 33). Administrative Law Judge Christopher S. Tindale (the "ALJ") conducted a telephone hearing on October 28, 2020, due to the coronavirus pandemic, in which Farmer M., represented by counsel, and a vocational expert ("VE") participated and

---

[1] On July 9, 2021, Kilolo Kijakazi automatically became the Defendant in this case when she was named as the Acting Commissioner of the SSA.

[2] To protect the privacy interests of claimants for Social Security benefits, and consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first names and last initials of non-governmental parties in its Social Security judicial review opinions.

testified.  (Filing No. 8-2 at 44-66.)  The ALJ issued a decision on December 17, 2020, concluding that Farmer M. was not entitled to benefits.  (Filing No. 8-2 at 12-26.)  The Appeals Council issued and unfavorable decision on July 16, 2021.  (Filing No. 8-2 at 2-9.)  On September 1, 2021, Farmer M. timely filed this civil action, asking the Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c) to review the final decision of the Commissioner.  (Filing No. 1.)

## II.     STANDARD OF REVIEW

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018).  To be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience.  42 U.S.C. § 423(d)(2)(A).

The Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled.  At step one, if the claimant is engaged in substantial gainful activity, he is not disabled despite his medical condition and other factors.  20 C.F.R. § 404.1520(a)(4)(i).  At step two, if the claimant does not have a "severe" impairment that also meets the durational requirement, he is not disabled.  20 C.F.R. § 404.1520(a)(4)(ii).  A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).  At step three, the Commissioner determines whether the claimant's impairment or combination of

impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant's impairments do not meet or medically equal one of the impairments on the Listing of Impairments, then his residual functional capacity will be assessed and used for the fourth and fifth steps. *See* 20 C.F.R. § 404.1520(a)(4)(iv)-(v). Residual functional capacity ("RFC") is the "maximum that a claimant can still do despite [his] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1)[3]; Social Security Ruling ("SSR") 96-8p (S.S.A. July 2, 1996), 1996 WL 374184). At step four, if the claimant can perform his past relevant work, he is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). At the fifth and final step, it must be determined whether the claimant can perform any other work, given his RFC and considering his age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). The claimant is not disabled if he can perform any other work in the relevant economy. *Id*.

The combined effect of all the impairments of the claimant shall be considered throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner for the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for

---

[3] The Code of Federal Regulations contains separate, parallel sections concerning DIB and SSI, which are identical in most respects. Cases may reference the section pertaining to one type of benefits. *See Craft*, 539 F.3d at 676 (citing 20 C.F.R. § 404.1545(a)(1)). Generally, a verbatim section exists establishing the same legal point with the other type of benefits. *See, e.g.*, 20 C.F.R. § 416.945(a)(1). The Court will take care to detail any substantive differences that are applicable to the case but will not usually reference the parallel section.

the ALJ's decision.[4]  *Stephens*, 888 F.3d at 327.  For the purpose of judicial review, "substantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'"  *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154).  "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled."  *Stephens*, 888 F.3d at 327.  Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'"  *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)).  The Court does "determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion."  *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits.  *Stephens*, 888 F.3d at 327.  When an ALJ

---

[4] According to

> 42 U.S.C. § 405(g) federal courts may review the [Commissioner's] 'final decision' and the findings of the [Commissioner] are conclusive if supported by substantial evidence.  The [Commissioner] has chosen the Appeals Council, not the ALJ, to make these final decisions.  Since federal courts may review only the [Commissioner's] final decisions and because the [Commissioner] has delegated [her] authority to make final decisions to the Appeals Council, reviewing courts must therefore defer to the Appeals Council's decision.

*Bauzo v. Bowen*, 803 F.2d 917, 921 (7th Cir. 1986) (citing 20 C.F.R. §§ 404.900 and 404.981) (additional citations omitted); *Schoenfeld v. Apfel*, 237 F.3d 788, 792 n.2 (7th Cir. 2001).  When the Appeals Council adopts findings of the ALJ without further elaboration, the court reviews the ALJ's decision in place of the otherwise absent analysis of the Appeals Council.  *See Cunningham v. Colvin*, 2014 WL 7238536, at *9 (N.D. Ohio Dec. 17, 2014) (quoting *Taylor v. Comm'r of Soc. Sec.*, 91 F.3d 144, *4, n. 2 (6th Cir. 1996) (unpublished decision) ("Where the Appeals Council relies on or adopts the findings of an ALJ, 'the substantial evidence standard of review applies to the findings regardless of whether they were made by the Appeals Council, the ALJ, or were made by the Appeals Council in reliance on the ALJ's findings.'  Accordingly, this Court reviews the conclusions of the ALJ to the extent that the Appeals Council affirmed them.").  Here, the Appeals Council adopted all the ALJ's findings and analysis, except that the Appeals Council clarified that the ALJ's findings regarding Farmer M.'s DIB claim applied to a period at issue beginning on his alleged onset date, June 20, 2019, rather than beginning on his protective filing date of July 24, 2019.  (Filing No. 8-2 at 5-6.)  Both parties agree that because the Appeals Council effectively adopted the ALJ's substantive findings without any changes that are material to the appeal, judicial review of the ALJ's decision is appropriate here.  (*See* Filing No. 10 at 2; Filing No. 11 at 2.)

4

does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

### III.   FACTUAL BACKGROUND

When Farmer M. filed his applications for DIB and SSI, he alleged that he could no longer work because of right shoulder pain, rotator cuff repairs to both shoulders, degenerative disc disease, sciatica, arthritis, and anxiety. (Filing No. 8-6 at 5.) He was 50 years old when his alleged disability began. (Filing No. 8-5 at 3-4.) Farmer M. had completed high school and worked as a factory line worker and foundry production worker. (Filing No. 8-6 at 6- 7.) The relevant evidence of record is amply set forth in the parties' briefs, as well as the ALJ's decision and need not be repeated here. Below are the facts relevant to the Court's disposition of this case.

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a)(4) and concluded that Farmer M. was not disabled. (Filing No. 8-2 at 26.) At step one, the ALJ found that Farmer M. had not engaged in substantial gainful activity[5] since June 20, 2019, the alleged onset date. (Filing No. 8-2 at 17.) At step two, the ALJ found that Farmer M. had "the following severe impairments: disorders of the spine including degenerative disc disease of the lumbar spine and cervical spine, osteoarthritis of the left shoulder joint, osteoarthritis of the right knee, and asthma." (Filing No. 8-2 at 17 (citations omitted).) At step three, the ALJ found that he did not have an impairment or combination of impairments that met or medically equaled

---

[5] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

the severity of one of the listed impairments. (Filing No. 8-2 at 19.) After step three but before step four, the ALJ concluded:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; never climb ladders, ropes, or scaffolds; and occasionally reach overhead with his left upper extremity. He should also avoid concentrated exposure to extreme heat, high humidity, and to pulmonary irritants such as fumes, odors, dusts, gases, and poor ventilation.

(Filing No. 8-2 at 20.) At step four, the ALJ found, considering the VE's testimony and Farmer M.'s RFC, that he could not perform his past relevant work as a forging machine operator, production line welder, and jackhammer operator, but he could perform his past relevant work as a quality inspector. (Filing No. 8-2 at 24.) In the alternative at step five, the ALJ found, considering the VE's testimony and Farmer M.'s age, education, work experience, and RFC, that he could have performed other work with jobs existing in significant numbers in the national economy in representative occupations like a production assembler, marker, and cashier. (Filing No. 8-2 at 24-25.)

## IV.   **DISCUSSION**

Farmer M. makes three assertions of error, that: (A) the ALJ's RFC finding is not supported by substantial evidence because he failed to confront the aspects of a consultative examiner's opinion, the examiner's clinical findings, and the record generally that were inconsistent with the ALJ's decision, (Filing No. 10 at 10-14), (B) the ALJ's RFC finding and the hypotheticals questions put to the VE failed to include Farmer M.'s mild mental limitations, (Filing No. 10 at 15-17), and (C) the ALJ failed to properly evaluate his subjective symptoms, (Filing No. 10 at 17-19).

6

A.     **Consultative Examiner's Opinion**

According to the regulatory scheme for claims like Farmer M.'s that were filed on or after March 27, 2017, the SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s),[6] including those from [the claimant's] medical sources."  20 C.F.R. § 404.1520c(a).  The SSA continues to use factors to evaluate the "persuasiveness of medical opinions and prior administrative medical findings" but the "most important factors" to be considered are "supportability" and "consistency."  *Id*.  How those factors were considered must be explained in the decision.  *Id*. at 404.1520c(b)(2).  "Supportability" considers the relevance of "the objective medical evidence and supporting explanations presented by a medical source."  *Id*. at 404.1520c(c)(1).  "Consistency" is compared "with the evidence from other medical sources and nonmedical sources in the claim."  *Id*. at 404.1520c(c)(2).  Explicit consideration of the remaining factors is permitted, but not always required, except upon a finding that "two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported … and consistent with the record … but are not exactly the same…."  *Id*. at 404.1520c(b)(2)-(3).  The remaining factors are the source's: (1) "[r]elationship with the claimant" including the "[l]ength of the treatment relationship," "[f]requency of examinations," "[p]urpose of the treatment relationship," "[e]xtent of the treatment relationship," and "[e]xamining relationship;" (2) "[s]pecialization;" and (3) "[o]ther factors," such as "evidence showing a medical source has familiarity with the other

---

[6] Administrative medical findings are determinations made by a state agency medical or psychological consultant at the initial or reconsideration level about a claimant's case, "including, but not limited to, the existence and severity of [his] impairment(s), the existence and severity of [his] symptoms, whether [his] impairment(s) meets or medically equals the requirements for any impairment listed in appendix 1 to this subpart, and [his] residual functional capacity." 20 C.F.R. § 404.1513a(a)(1).

7

evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements." *Id*. at 404.1520c(c)(3)-(5).

The ALJ addressed the opinion of Kurt Jacobs, D.O. (Filing No. 8-2 at 23.) The ALJ explained:

> The claimant underwent a physical consultative examination on September 24, 2019, performed by Dr. Kurt Jacobs (Exhibit 6F). During examination, the claimant's posture and gait were noted to be abnormal, though he did not display any difficulty getting onto and off of the examination table. Examination noted some decreased range of motion in the claimant's shoulders, knee, and cervical and lumbar spine. Upon completing the examination, Dr. Jacobs opined that the claimant was able to handle objects without difficulty, could stand/walk frequently, sit "most of the time," and lift or carry up to 20 pounds on an occasional basis. While Dr. Jacobs's findings are vague and do not necessarily reflect postural limitations that would be expected with the decreased range of motion that he described, Dr. Jacobs's findings are persuasive to the extent that they limit the claimant to light exertional levels, which is consistent with the longitudinal record, as detailed above.

*Id*. By regulation:

> Light work involves lifting no more than 20 pounds at a time with frequent[7] lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

20 C.F.R. § 404.1567(b). By contrast:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally[8] lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

---

[7] "'Frequent' means occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10 (S.S.A. 1983), 1983 WL 31251, at *6.

[8] "'Occasionally' means occurring from very little up to one-third of the time. Since being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *5.

*Id*. at 404.1567(a). If Farmer M. was limited to sedentary exertional work, he would not be able to perform any of his past relevant work including as a quality inspector. (*See* Filing No. 8-2 at 63 (the VE testified that a quality inspector is light exertional work and there is no indication that Farmer M. actually performed his job at the sedentary level)).) At step five, if Farmer M. was limited to sedentary work, based on his age, education, and work experience, the Medical-Vocational Guidelines would direct that he be found "[d]isabled." *See* 20 C.F.R. § Pt. 404, Subpt. P., App. 2, Rule 201.14; (Filing No. 8-2 at 64 (the VE testified that Farmer M. did not have any transferable skills to sedentary work.)). The ALJ addressed the restrictions that Dr. Jacobs described in his "medical source statement," including the limitations that are consistent with light exertional work that Farmer M. could stand/walk "frequently" and lift and carry up to 20 pounds occasionally. (Filing No. 8-7 at 108.) However, the ALJ did not address Dr. Jacobs' statements in the "musculoskeletal" section of his examination findings:

> [Farmer M. had an a]ntalgic gait without a cane. Abnormal gait. Abnormal speed. Abnormal station. Poor sustainability. Not able to walk on heels, toes, tandem walk, and squat. Normal straight leg raise. No deformity. No enlargement, or effusion. No amputation. Claimant self-prescribed use of a knee brace and a back brace 3 years and 6 months ago. The braces are used as needed for pain relief. Can stand or walk for 2 hours in an 8 hour day, and can carry 10 pounds or more while using an assistive device.

*Id*.

The SSA's guidance explains that the ALJ's "RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7. The Seventh Circuit has explained that "although an ALJ does not need to discuss every piece of evidence in the record, the ALJ may not analyze only the evidence supporting [his] ultimate conclusion while ignoring the evidence that undermines it." *Moore v. Colvin*, 743 F.3d

9

1118, 1123 (7th Cir. 2014). "The ALJ must confront the evidence that does not support [his] conclusion and explain why that evidence was rejected." *Id*. An assessment that Farmer M. was limited to standing and walking two hours in an eight-hour day and carrying ten pounds or more while using an assistive device is inconsistent with a light exertional RFC and more consistent with a sedentary exertional RFC.

The Commissioner argues that "it is apparent that the ALJ reasonably did not believe this statement was actually Dr. Jacobs's opinion." ([Filing No. 11 at 14](Filing No. 11 at 14).) The Commissioner contends that conclusion is supported by the placement of the statement: immediately following a description of Farmer M.'s reported use of self-prescribed braces, coupled with the fact the statement does not appear in Dr. Jacobs' medical source statement and conflicts with his assessments located there that Farmer M. could frequently stand/walk and lift carry up to 20 pounds. *Id*. The Commissioner's arguments are plausible. But the Seventh Circuit has explained that "[u]nder the Chenery doctrine, the Commissioner's lawyers cannot defend the agency's decision on grounds that the agency itself did not embrace." *Kastner v. Astrue*, 697 F.3d 642, 648 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.") (additional citations omitted)). The ALJ did not address the statements, and did not make clear that he discounted the described limitations because he did not consider them to be Dr. Jacobs' medical opinion. The alternative explanation is that the ALJ was simply not aware of the statements in Dr. Jacobs' report that were inconsistent with his medical source statement and the ALJ's RFC finding. The only rationales that the ALJ provided for departing from Dr. Jacobs' opinion were that his assessments: (1) were vague, (2) did not appear to limit Farmer M.'s postural abilities enough given his recorded range of motion findings, and (3) were inconsistent with the

longitudinal record. The first reason concerning vagueness appears to refer to Dr. Jacobs' medical source statement that Farmer M. could sit most of the time. There is no indication that the ALJ, for example, found Dr. Jacobs' report ambiguous based on his inconsistent statements. The second reason concerning his range of motion findings support only that his assessments may not have been limiting enough.

As Farmer M. points out, the ALJ also neglected to mention other relevant examination findings made by Dr. Jacobs. (Filing No. 10 at 13.) The Seventh Circuit has explained that "when a physician provides significant evidence that cuts against the conclusion reached by the ALJ, the ALJ must provide enough analysis to allow a reviewing court some idea of why [he] rejected it." *Spicher v. Berryhill*, 898 F.3d 754, 757-58 (7th Cir. 2018). In the same section of Dr. Jacobs' report that described his musculoskeletal examination findings, he clearly recorded his own observations that Farmer M. had an antalgic gait, poor sustainability of his gait and station, and could not walk on heels, toes, tandem walk, and squat. (Filing No. 8-7 at 108.) Dr. Jacobs also recorded that Farmer M. had full strength at a level of 5 involving his cervical spine, but strength in all other tested body parts was reduced at a level of 4 in his shoulders, elbows, wrists, hips, knees, ankles, and hands, *i.e.* grip strength, bilaterally. *Id*. Dr. Jacobs further recorded that Farmer M. had absent reflexes in his elbows and knees. *Id*. The ALJ mentioned Farmer M. having an abnormal posture and gait,[9] but he did not acknowledge any of Dr. Jacobs' other specific findings.

The ALJ's third reason for discounting Dr. Jacobs' statements, concerning consistency with the longitudinal record, is also problematic. The ALJ's omissions, detailed above, are compounded

---

[9] That specific finding and language that Farmer M.'s "[p]osture and gait [were] abnormal," appears in the section of Dr. Jacobs' report describing his examination findings regarding "physical movements," and immediately precedes the observation that Farmer M.'s "[a]bility to get on and off [the examination] table [was] normal and [did] not require assistance." (Filing No. 8-7 at 107.) The ALJ expressly acknowledged these findings when he summarized Dr. Jacobs' report. (Filing No. 8-2 at 23.) But the ALJ did not expressly refer to the more detailed examination findings concerning Farmer M.'s gait and station in the musculoskeletal section of Dr. Jacobs' report. Accordingly, the ALJ has not demonstrated that he considered the entire report.

11

by other relevant examples of his failure to confront conflicting evidence, including examination findings and Farmer M.'s reported response to treatment. The evidence the ALJ neglected—which appears to support a sedentary RFC—is at the very least inconsistent with his summary of the record. For example, regarding treatment records, he explained:

> The record indicates that the claimant has a history of lower back pain, which was treated through opioid pain medication (See, e.g., exhibit 5F/7). Reported symptoms included pain in the buttocks which radiated through his legs bilaterally and difficulty transitioning from a seated position to standing (Exhibit 5F/8). The claimant reported that medication provided 80% relief from symptoms to the extent that he is able to carry out his activities of daily living (Exhibit 5F/17). He did not indicate that he had any impairment in his ability to drive and the claimant was not observed to display any abnormalities in his gait and station (Exhibit 5F/17).

(Filing No. 8-2 at 21.) The ALJ's citation to "Exhibit 5F/17" is from a treatment visit with Farmer M.'s primary care nurse practitioner, on January 18, 2019, that predates his alleged onset of disability on June 20, 2019. (Filing No. 8-7 at 78.) On July 10, 2019, the treatment notes continued to record that Farmer M. reported medications gave him 80% relief of his pain and allowed him to carry out his activities of daily living. (Filing No. 8-7 at 70.) He was reportedly no longer able to do factory work due to the poor condition of his shoulders. *Id*. His examination showed normal motor strength, muscle tone, gait, and station, but limited and painful range of motion in his shoulders, elbows, and knees, and he had difficulty with transitioning from standing to sitting and ambulating initially. *Id*. By January 6, 2020, Farmer M. reported that his activities of daily living improved with medication "[o]nly mildy," he got 60% pain relief from his medications, and he could not work because of his shoulders, hands, and lower back. (Filing No. 8-7 at 141.) His provider's examination findings were similar, but he also had positive muscle spasms that were observed in both shoulders. *Id*. On February 24, 2020, an examination of Farmer M.'s motor strength also recorded that he had "poor tone," and his gait was "irregular." (Filing No. 8-7 at 184.) The ALJ did not expressly rely on any examination findings during the period at issue

12

concerning Farmer M.'s back impairment. And the ALJ did not demonstrate that he was aware of the later examination findings that were inconsistent with his summary of the record.

Accordingly, remand is necessary for further consideration of Dr. Jacobs' opinion, his examination findings, the relevant treatment records from the entirety of the period at issue, and Farmer M.'s RFC.

**B.     Mild Mental Limitations**

When assessing the "paragraph B" criteria, the ALJ found that the Farmer M. had mild limitations understanding, remembering, and applying information; interacting with others; and concentrating, persisting, or maintaining pace; but no limitation adapting or managing himself. (Filing No. 8-2 at 18-19.) The limitations identified in the paragraph B criteria are used to rate the severity of mental impairments at steps two and three of the sequential evaluation process. 20 C.F.R. § 404.1520a(d)-(e). However, the RFC assessment used at steps four and five requires a more detailed assessment by itemizing various functions contained in the broad areas of functioning found in paragraph B of the adult mental disorder listings. SSR 96-8p, 1996 WL 374184, at *4.

Farmer M. contends that the ALJ did not expressly consider the mild paragraph B mental limitations that he found when he explained his RFC assessment. (Filing No. 10 at 16.) He also contends that the ALJ did not account for his mild limitations when the ALJ assessed his RFC and solicited testimony from the VE about his capacity to work. (Filing No. 10 at 16-17.) However, the appellant must establish harm by identifying specific RFC limitations that were supported and neglected. *See Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019). And here, Farmer M. has not identified a specific, vocationally relevant limitation that was neglected or explained how the

record supported that limitation.  Accordingly, Farmer M. has not demonstrated prejudice based on the ALJ's omission of any mental limitations in his RFC.

C. **Subjective Symptom Evaluation**

"RFC determinations are inherently intertwined with matters of credibility . . . ." *Outlaw v. Astrue*, 412 F. App'x 894, 897 (7th Cir. 2011).  Having found remand necessary for further consideration of Farmer M.'s RFC, the Court declines to address his remaining arguments concerning the ALJ's evaluation of his statements about his subjective symptoms, *i.e.*, his credibility.  As the Court explained above, the ALJ failed to demonstrate that he considered the longitudinal record concerning Farmer M.'s reported response to treatment.  Accordingly, the ALJ should reevaluate Farmer M.'s subjective symptoms along with and in the context of further consideration of his RFC.

V. **CONCLUSION**

As stated above, the final decision of the Commissioner is **REMANDED** for further proceedings consistent with this Entry as authorized by Sentence Four of 42 U.S.C. § 405(g).

**SO ORDERED.**

Date:  11/10/2022

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Kenneth R. Hiller
LAW OFFICES OF KENNETH HILLER PLLC
khiller@kennethhiller.com

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov

Lindsay Beyer Payne
SOCIAL SECURITY ADMINISTRATION
lindsay.payne@ssa.gov